1                    IN THE COURT OF APPEALS OF THE STATE OF OREGON

2   JAMES ARTHUR ROSS,                    )
                                          )    Malheur Cty. Cir. Court Case
3          Petitioner-Appellant,          )         No. 05084630M
                                          )
4      vs.                                )    Appellate Court Case
                                          )        No. A135040
5   JEAN HILL, Superintendent,            )
    Snake River Correctional Institution, )    APPELLANT'S MOTION IN OBJECTION
6                                         )    TO COUNSEL'S MEMORANDUM OF
           Defendant-Respondent.          )    ADDITIONAL AUTHORITIES
7

8          **COMES NOW**, the Appellant, James Arthur Ross, independent of his counsel, to object

9   to and complain that his appellate counsel, Andrew S. Chilton #972339, without any conferring

10  or consent of this appellant, has submitted a "Memorandum" to not only concede, but abandon as

11  well at least two (2) claims or issues that the appellant still seeks ruling upon as violation(s) of

12  his Constitutional Sixth Amendment rights. The appellant wants to at least adopt those

13  arguments into his supplemental brief along with all of the arguments made below. The appellant

14  does not wish to abandon those arguments whatsoever as to, but not limited to the reasons set out

15  below.

16         Appellate counsel[1] states in his memorandum that counsel relied on the Oregon Supreme

17  Court's decision in *State v. Ice*, 343 Or 248, 170 P.3d 1049 (2007). This statement is not entirely

18  accurate and appellate counsel would know this if he had properly conferred with the appellant.

19         In the third assignment of error, appellate counsel refers to claim "n" of the appellant's

20  post-conviction petition. That claim originally cites *Blakely v. Washington,* and the fact that the

21  original trial court had accepted pleas from the appellant that involved pleas of "not guilty" to

22  any and all aggravating factors. In appellate counsel's argument, the *Ice* case is briefly cited. The

23  main argument relies on the rules announced in the *Apprendi* and *Blakely* cases and trial

24
    [1] Please note that current appellate counsel is not the same counsel that originally filed the opening brief on Appellant's behalf.

1    counsel's failure to defend, identify and advocate for his client, the appellant.

2        Now, keeping in mind that appellant's pleas involved "not guilty" pleas as to the

3    aggravating factors. At sentencing, the sentencing judge did not even cite any authority or statue,

4    let alone on the record, as to why he was handing down this extremely harsh and excessive

5    amount of incarceration. In fact, the only thing the judge did state on the record, just seconds

6    before he handed down the sentence, that would give some sign of a reason as to his decision is a

7    brief colloquy between himself and the prosecutor. The judge makes a couple statements,

8    without any objection from Appellant's trial counsel, that "It was clear that the victim almost

9    died in the ambulance and their experience saved her, in my view. I would have had an

10   aggravated death penalty case clearly had she died". After this statement the prosecutor

11   responded "correct, your honor". Trial counsel remained silent. The sentencing judge's reliance

12   on these statements as facts to justify the imposition of an extremely harsh and lengthy sentence

13   would still be susceptible to the bright line rules announced in *Apprendi* and *Blakely*.

14   Accordingly, trial counsel's deficiencies would have still rendered the appellant ineffective and

15   inadequate assistance of counsel. The trial in this case was never concluded. Therefore, these

16   statements or facts that the sentencing judge relied on were never proven beyond a reasonable

17   doubt or admitted to by the appellant. In fact, the medical records, statements and affidavit from

18   Tammy J. Mendenhall would prove otherwise. Even more disturbing is the fact that both the

19   prosecutor and the appellant's own counsel had copies of the medical records ect. and yet still

20   chose to not only allow, but lead, the sentencing judge into believing otherwise. This fact is

21   undeniable!!

22        There is approximately two pages of colloquy where the prosecutor made several

23   statements to the sentencing judge about why the appellant should be sentenced harshly and

24   consecutively. Some of those statements were "The defendant affirmatively tried to kill her".

1  "He expected that the gun was going to go off when he stepped back and leveled it at her head

2  and pulled the fucking trigger"; "He expected that the gun was going to go off and shoot her in

3  the head"; "He also had absolutely no intention of getting her medical care the next morning, I

4  mean, that was abundantly clear".

5       **This** is more than just merely characterizing the defendant. These are statements of facts

6  that were never proven beyond a reasonable doubt in a court of law, nor admitted to by the

7  defendant/appellant. Even in the Oregon Supreme Court's opinion in *Ice* they state that facts that

8  characterize the defendant are normally for the sentencing judge, whereas, facts that pertain to

9  the crime are for the jury. All of the facts used in determining that the appellant should be

10  sentenced harshly and consecutively, were all facts pertaining to the crime and thus never proven

11  beyond a reasonable doubt in a court of law, nor admitted to by the defendant/appellant. This is

12  not all either!! The prosecutor continues intensely for another page of **"accusations"**. The

13  prosecutor insists that they are "facts", yet, the trial concluded before the defense ever began. All

14  the while trial counsel still remains more than just silent. In fact, he asks the court for permission

15  to take a seat as he "procedurally" hurt his back, so conveniently, the night before. Therefore, as

16  stated above, all of this would still fall under the rules announced in *Apprendi* and amplified in

17  *Blakely*. This is especially clear where there is evidence and law that clearly contradicts all of

18  these facts used to sentence the appellant so harshly and consecutively.

19       Appellate counsel also abandons the Appellant's fourth assignment of error for the same

20  reason(s). This, again, is absurd!! The argument above would continue and apply here. The *Ice*

21  case was a brief reference to the **"undeniable"** fact that had appellate counsel filed a direct

22  appeal, the Appellant would have at **"least"** won on the consecutive sentencing issues in the

23  **"Oregon"** appellate courts.

24       Now, that being said, the main basis for the claim, is that appellate counsel not only failed

1   to file a notice of appeal, she refused to file any form of appeal altogether. No brief of any kind

2   whatsoever. No Balfor, no Ander's, no Merits brief, nothing!! This is a very critical and

3   substantial error or judgment on the behalf of the appellate counsel, Rebecca Duncan. Especially,

4   in a case where the only thing stated on record during sentencing to try and justify the extremely

5   harsh and consecutive sentence imposed on the appellant, was a colloquy of **"hypothetical"** fact-

6   finding between the sentencing judge and the prosecutor while defense counsel remained silent!!

7          This, itself, is a violation of the rules announced in *Apprendi* and amplified in *Blakely*!!

8          This is exactly the type of judicial fact-finding that both the Oregon and United States

9   Supreme Courts were trying to prevent. This type of fact-finding goes beyond characterizing the

10   defendant and actually takes the jury rule into it's own hands. This is exactly what our framers of

11   the Constitution of the United States of America, to which the appellant is a citizen of, were

12   trying to prevent and protect it's citizens from. This is the extensive and far reaching and

13   overwhelming arm of the government. Appellate counsel rendered the appellant, ineffective and

14   inadequate assistance of counsel, violating his State and Federal **Constitutional** rights and the

15   appellant has suffered prejudice as a result.

16          Even though the *Ice* case was later overturned by the United States Supreme Court, it

17   does not usurp the claims presented to this honorable court here. It should also not be made a

18   "loop hole" for the action(s) of Appellant's trial and appellate counsel's deficiencies. Also note,

19   that the United States Supreme Court overturned the *Ice* case pertaining to the part of Oregon's

20   O.R.S. 137.123. However, the facts of the Appellant's sentencing are substantially different as it

21   is far from clear as to the specifics as to why the sentencing judge sentenced the appellant as he

22   did. As stated above, the only facts stated on record, seem to be the extremely and substantially

23   prejudicial, fact-finding, that occurred between the sentencing judge and the prosecutor. Plus, the

24   Oregon Supreme Court explained in *State v. Caraher*, 293 Or 741, 749, 653 P.2d 942 (1982),

1   "[W]hen this court gives Oregon law an interpretation corresponding to a federal opinion, our

2   decision remains Oregon law even when federal doctrine later changes". See also, *State v. Cook,*

3   340 Or 530, 540 135 P.3d 260 (2006) (declining to abandon this Court's interpretation of

4   Oregon's Confrontation Clause, because Federal Court's had announced a new analysis of the

5   United States Confrontation Clause).

6       Also, in *State v. Quinn,* 290 Or 383, 623 P.2d 630 (1981) (facts which constitute a crime

7   are for the jury) and later in *Wedge* the Court indicated that it **would** look beyond the legislative

8   label attached to an enhancement factor to determine whether, in reality, it was an element of the

9   crime for which the defendant was to be punished (and, thus, a fact that must be determined by

10  the jury). The fact remains, abundantly clear, that the reasons that persuaded the sentencing

11  judge's mind, in determining the extremely harsh and prejudicial sentenced imposed on the

12  Appellant, is the extremely and substantially prejudicial colloquy, between the sentencing judge

13  and the prosecutor. The Appellant's Constitutional rights have been violated and the appellant

14  has suffered prejudice as a result.

15      Finally, Appellant contends, that his assigned appellate counsel has "made himself

16  'master' over these matters" and *Sua Aponte/Own Volition,* not adhered to the spirit nor precepts

17  settled in *Farretta v. California,* 422 U.S. 806, 819-20, 95 S.Ct. 2525 (1975) as cited and

18  referred to within *Guinn v. Cupp,* 304 Or 488, 747 P.2d 984 (1987) and *Lawson v. Maass,* 119

19  Or App 287, 850 P.2d 398, 399-400 (1993).

20      Appellant claims, that, these actions prima facie, shows assigned appellate counsel's

21  willingness to not actively pursue – nor cooperatively collaborate with this Appellant; and this,

22  in and of itself, "is a denial of Appellant's rights on appeal, to due process of the law".

23      Appellant therefore argues, that, although the issues presented in Counsel's brief, cited to

24  or referred to *Ice's* precepts; the core issue(s) are of Sixth Amendment violations – not resting

1    solely "only whether or not, *Ice* prevailed (or not) in the United States Supreme Court", in 2009.

2         Simply because Mr. Ice's "assigned public defense counsel" Ernest Lannet, refused or

3    failed to actively and articulatively provide Mr. Ice with proper addressing of Mr. Ice's

4    arguments to the U. S. Supreme Court, sufficient for the Court to rule in Mr. Ice's favor; should

5    not, nor cannot "hamstring" this Appellant from gaining relief from Sixth Amendment

6    violations.

7         This also does not give appellate counsel license to provide this instant Appellant,

8    "assistance" that will intentionally cause him to lose his issue(s)/claim(s), that, appellate counsel

9    formally made notice of, in Counsel's brief. Had not counsel made not of it, within his brief that

10   was submitted on Appellant's behalf; Appellant would have raised these same issues, within his

11   own supplemental brief that he supplied to this honorable court.

12        Appellant therefore seeks this honorable court to,

13             (a) Disregard appellate counsel's "concession"/"conceding"/"abandoning" of the
                   issue(s); and instead, "Re-assign or re-interpret" them to be construed as
14                 "Sixth Amendment violations" and/or amend them to include all of the above
                   arguments; and
15             (b) Give Appellant a full hearing on these matters.

16        Appellant therefore, respectfully Objects to Counsel's actions; and seeks the relief

17   requested above.

18        Respectfully submitted, this 12th day of May, 2009.

19

20                                              James Arthur Ross - *Pro Se*

21                                              S.I.D.# 12599830
                                                777 Stanton Blvd.
22                                              Ontario, Oregon 97914
                                                (541) 889-4639
23

24

## APPELLANT'S PRO SE SUPPLEMENTAL BRIEF

### Adoptions

The petitioner adopts by reference the "Statement Of The Case" and "Summary Of Facts" in it's

entirety, that the petitioner's attorney has prepared for him in the opening appellate brief.

### Summary Of Argument

Petitioner wants to argue that limiting this brief to 5 pages is a great injustice to him causing

him prejudice. Therefore, the petitioner's intentions in this brief is to present all of his claims to this

court and in the least properly preserve them all for further appellate reviews, especially federal

reviews. This includes all exhibits, affidavits, motions and the fifth amended petition that was filed or

attempted to be filed in the post-conviction proceedings. More specifically, exhibits 4, 5, 14, 19, 39,

40, 52, 43, 65, 69, 73, 74, 75, 76, 78, 79, 80 and the investigation reports from David Terry, Carolyn

Andersch and Lori Nightengale-Bender. The petitioner also claims that throughout his entire case thus

far and his counsel's opening brief, he has shown and proved his due diligence, why he should have

been afforded substitute counsel, why his pleas are not knowingly, intelligently and voluntarily made

and why he should have been afforded a direct appeal. Then now, in the post-conviction proceedings,

the petitioner claims that it to was unfair. This due to the facts that he was denied specific transcripts

of his trial proceedings and the transcript he did receive is different than the audio recordings. Then

about 90% of the petitioner's exhibits and ect. were all thrown out for being improperly or untimely

filed. The petitioner has been subjected to double jeopardy, denied due process of the law, denied

equal protection of the law, subjected to cruel and unusual punishment and/or has received ineffective

assistance of counsel as guaranteed to him under Article 1, Section 10, 11 and 15 of the Oregon

Constitution and *Trujillo v. Mass*, and the 1st, 4th, 5th, 6th, 8th, and 14th Amendments of the United States

Constitution, made applicable to the states by the 14th Amendment to the United States Constitution and *Strickland v. Washington,* and he has suffered prejudice as a result.

## INCORPORATIONS/PRESERVATIONS

The petitioner wants to incorporate by reference all of his claims presented in his fourth amended formal petition for post-conviction relief. This includes both, those claims made under ineffective assistance of trial counsel and those claims made under ineffective assistance of appellate counsel. The petitioner also wishes to incorporate and preserve the previously discussed exhibits, ect.

## ASSIGNMENTS OF ERROR

The post-conviction court erred by denying relief on the petitioner's several and very important claims violating his State and Federal Constitutional rights and/or birthrights. All of the claims discussed below can be found and are preserved under sections 9 and 11 of the petitioner's fourth amended petition for post-conviction relief (attached). In claims: a., hh., jj., kk., ll., mm. and yy, petitioner claims that he had several conflicts and extremely just reasons why he should have been afforded substitute counsel instead of being forced to proceed with Mr. Bouck. He also filed several exhibits to back up those claims. There is several requests and motions that he filed in the trial court begging for substitute counsel. All denied without any inquiry by the courts. Compile this with his mother's own written requests as she was once represented by the same counsel and fired him for the same foul play, ill-tactics, coerciveness and ineffectiveness that counsel was forcing upon the petitioner. Counsel admits in his affidavit that there was problems between himself and the petitioner that affected the preparation of the defense and the outcome of the trial. The part he left out was the absolute break of communication and relationship between them for several weeks leading up to the day of trial. This was so unrepairable that counsel brought in a co-worker to try and help the situation.

This act alone, proof in itself, of the extreme conflicts that existed and the complete and unrepairable break in the attorney/client relationship. See _Holloway_[1] (Violation of right to effective assistance of counsel, because trial judge failed to investigate claim of possible conflict of interest on part of defendant's attorney). See also, _Harris by and through Ramseyer v. Wood_[2] and _Mak v. Blodgett_[3] [...prejudice may result from cumulative impact of multiple deficiencies.]. This is so even where no single error of omission of counsel, standing alone, significantly impairs the defense. _Ewing v. Williams_[4]. See also, _Heiser v. Ryan_[5], This case applies to counsel's refusal to defend the petitioner. The opposing party would argue that the petitioner waived his rights when he made a plea. The petitioner claims that his plea is in fact a direct result of the ineffective assistance of counsel and the conflicts between them. He asserts that he has proven what his will was and what he believed to be in his best interests. This was to go to and finish trial. Even on the day of trial the petitioner again stated on record, his bad faith in counsel and beliefs that counsel was not working in his best interests and had no defense prepared for him. That the court should substitute counsel. That if the court would not, he wanted to appeal. This is a grave miscarriage of justice. The petitioner's will was overborne by his interrogators and he has suffered prejudice as a result. At one point, before the pleading took place, the petitioner stood up as a last resort or attempt to defend himself and asked the court if he could cross-examine himself. He was told no. Then, counsel confronted him behind doors during a recess break and stated that the judge had intervened and demanded that a plea be made. That if he did not make his wife (the victim) take the stand the judge would go light and he would receive a concurrent sentence of 120 months. Although, if he refused the deal and insisted to continue trial then the judge would be

---

[1] _Holloway_, 435 US 484
[2] _Harris by and through Ramseyer v. Wood_, 64 F.3d 1432(9th Cir. 1995)
[3] _Mak v. Blodgett_, 970 F.2d 1325(9th Cir. 1972)
[4] _Ewing v. Williams_, 596 F.2d 391(9th Cir. 1979)
[5] _Heiser v. Ryan_, 951 F.2d 559(3rd Cir. 1991)

**PRO SE SUPPLEMENTAL BRIEF**

harsh and sentence him consecutively to any convictions obtained. Compile this with everything above

and it is easy to see how the petitioner's pleas were induce, coerced and how justice became gravely

misplaced. A trial judge's personal involvement can render the petitioner of the capability in rationally

weighing his options and thus causes the plea to not be knowingly, voluntarily and intelligently made.

A judge's involvement can also be construed as coercive. See Fed. R. Crim. P. 11 (e) (1), _United States_

_v. Bruce_[6] and _United States v. Casallas_[7]. Other cases surrounding these issues are _Parker v. North_

_Carolina_[8], even though the defendant is not necessarily rendered incapable of rational choice, his

guilty plea nonetheless may be invalid. See also _Machibroda v. U.S._[9]. Next, is claims p, v, z, aa, ff, oo,

ww, and vv. These are obvious by looking at the convictions and sentences imposed on the petitioner.

There was no kidnapping in this case (see _State v. Wolleat_[10]) and no evidence for a claim of attempted

aggravated murder. Counsel pointed this out in his opening brief. Defendant who was not informed of

critical element of the offense to which he pled guilty entered his plea involuntarily, _Henderson v._

_Morgan_[11]. Also see, _U.S. v. Brown_[12] and _Bousley v. U.S._[13]. Next, is claims o, q and u. The standard set

by the U.S. Supreme court in _Santobello v. New York_[14] is what you reasonably understood the

recommended sentence would be in exchange for your plea (The promise is not required in writing).

_Blackledge v. Allison_[15] decision in favor of a prisoner who alleged that he had been promised a

particular sentence in exchange for his plea. Next, is claim j. See _James v. Cupp_[16]. Also see, _State v._

_Garcia_[17] a record with multiple judgments of conviction and concurrent sentences when only one

[6] _United States v. Bruce_, 976 F.2d 552(9th Cir. 1992)
[7] _United States v. Casallas_, 59 F.3d 1173(11th Cir. 1995)
[8] _Parker v. North Carolina_, 90 S.Ct. 1474 (U.S.N.C. 1970)
[9] _Machibroda v. U.S._, 82 S.Ct. 510(U.S. Ohio 1962)
[10] _State v. Wolleat_, 338 Or 469, 111 P.3d 1131(2005)
[11] _Henderson v. Morgan_, 426 U.S. 637(1976)
[12] _U.S. v. Brown_, 117 F.3d 471(11th Cir. 1997)
[13] _Bousley v. U.S._, 118 S.Ct 1604, 523 U. S. 614,(U.S. Minn. 1998)
[14] _Santobello v. New York_, 404 U.S. 257(1971)
[15] _Blackledge v. Allison_, 431 U.S. 63(1977)
[16] _James v. Cupp_, 671 P.2d 750(Or. App. 1983)
[17] _State v. Garcia_, 605 P.2d 671(Or. 1980)

**PRO SE SUPPLEMENTAL BRIEF**

sentence is proper amounts to a "punishment disproportionate to the defendant's criminal responsibility for a single criminal episode". Next, is claim nn. Evidence of this is reflected in the audio cd of the trial transcripts. In *Morgalli-Olvera v. I.N.S.* [18] held, ambiguity of language in plea agreement is construed in favor of defendant and against the government. In this case, this is a verbal plea of not guilty to a significant offense. Next, is claim d. The facts are obvious. The petitioner received 240 months of post-prison supervision. Trial counsel made no objections. See *Britton v. Slater* [19] held that defense counsel's failure to object to unauthorized term of post-prison supervision was ineffective assistance of counsel. See also, *State v. Crowell* [20], *State v. Umtuch* [21] and *State v. Burch* [22] trial court failed to make allowance for defendant's time served. In claims dd and ss petitioner claims his trial counsel coerced him into making a plea to a deal of no deal. In one case an agreement by prosecutors to drop a greater charge which had no impact on applicable sentencing guidelines range provided no benefit to defendant, *U.S. v. Stanley* [23]. The petitioner received nothing, no benefit, just a counsel's refusal to defend. Next, is claim uu. Counsel's deficiencies to fully object to the manner of the search and seizure of the petitioner's home and the interrogation tactics (lies) used to subtract statements from the petitioner. See *Florida v. J.L.* [24]. Petitioner has suffered prejudice and prays for this honorable court to remand his case for any further proceedings that it would deem just and proper.

Respectfully Submitted By,

x_____
(Petitioner's Signature)
JAMES ARTHUR ROSS  PRO SE'
S. I. D. # 12599830

[18] *Morgalli-Olvera v. I.N.S.*, 43 F.3d 345(8th Cir. 1994)
[19] *Britton v. Slater*, 994 P.2d 1203(Or. App. 2000)
[20] *State v. Crowell*, 109 P.3d 390(Or.App. 2005)
[21] *State v. Umtuch*, 927 P.2d 142(Or. App. 1996)
[22] *State v. Burch*, 896 P.2d 10(1995)
[23] *U.S. v. Stanley*, 928 F.2d 575(2nd Cir. 1991)
[24] *Florida v. J.L.*, __ U.S.__,120 S.Ct. 1375, 146 L.Ed.2d 254(2000)

ER - 12

FILED: May 19, 2010

IN THE COURT OF APPEALS OF THE STATE OF OREGON

JAMES ARTHUR ROSS,
Petitioner-Appellant,

v.

JEAN HILL, Superintendent, Snake River Correctional Institution,
Defendant-Respondent.

Malheur County Circuit Court
05084630M

A135040

Joseph F. Ceniceros, Senior Judge.

Submitted on July 21, 2009.

Patrick M. Ebbett and Chilton, Ebbett & Galli, LLC, filed the opening brief for appellant. James Arthur Ross filed the supplemental brief *pro se.*

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Judy C. Lucas, Senior Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Schuman, Judge.

LANDAU, P. J.

Reversed and remanded with instructions to enter judgment granting post-conviction relief and resentencing on kidnapping convictions; otherwise affirmed.

---

## DESIGNATION OF PREVAILING PARTY AND AWARD OF COSTS

Prevailing party:     Appellant

[ ]  No costs allowed.
[X]  Costs allowed, payable by Respondent.
[ ]  Costs allowed, to abide the outcome on remand, payable by

---

1    LANDAU, P. J.

2          Petitioner pleaded no contest to and was convicted of multiple offenses,

3    including two counts of first-degree kidnapping.  A judgment of conviction was entered

4    on those convictions, including two separate counts of kidnapping.  Petitioner sought

5    post-conviction relief, arguing that his court-appointed lawyer was constitutionally

6    inadequate for a number of reasons, including that the lawyer failed to assert that the

7    criminal trial court should have merged the two kidnapping convictions.  The post-

8    conviction court denied relief, and petitioner appeals.

9          We reject all but one of petitioner's contentions without discussion, writing

10   only to address his argument that counsel should have objected to the failure to merge the

11   two kidnapping convictions.  The state concedes that the judgment should have merged

12   the two convictions, but it insists that, given the prevailing uncertainty about the state of

13   the law at the time that judgment was entered, petitioner's counsel was not

14   constitutionally inadequate for having failed to raise the issue.  We agree with petitioner

15   that counsel was constitutionally inadequate for failing to move to merge the two

16   kidnapping convictions.  We therefore reverse in part and remand for entry of post-

17   conviction relief.

18         The relevant facts are not in dispute.  Petitioner was charged with two

19   counts of first-degree kidnapping.  ORS 163.235 defines the offense of first-degree

20   kidnapping and provides, in part:

1

1        "(1) A person commits the crime of kidnapping in the first degree if

2     the person violates ORS 163.225 [second-degree kidnapping[1]] with any of

3     the following purposes:

4         " * * * * *

5         "(c) To cause physical injury to the victim; or

6         "(d) To terrorize the victim or another person[.]"

7   Tracking that statutory phrasing, the first kidnapping count in the indictment charged that

8   petitioner kidnapped the victim by taking her from one place to another, with the purpose

9   of causing her physical injury. ORS 163.235(1)(c). The second kidnapping count

10  charged that petitioner kidnapped the victim by taking her from one place to another,

11  with the purpose of terrorizing her. ORS 163.235(1)(d). Petitioner pleaded no contest to

12  both counts, and the court entered a judgment of conviction on each count.[2] At

---

[1]    ORS 163.225 provides, in part:

        "(1) A person commits the crime of kidnapping in the second degree
if, with intent to interfere substantially with another's personal liberty, and
without consent or legal authority, the person:

        "(a) Takes the person from one place to another[.]"

[2]    The prosecutor provided the following factual basis for petitioner's no contest
plea:

        "The evidence would be * * * the initial assaults began in the area of the
kitchen, that they moved at various points on down the hall towards the
master bedroom, that the assaults continued in the bedroom, that she was
moved again down through the hall, that all of this movement was against
her will and interfered with her liberty, that during all of this movement, * *
* defendant [was] subjecting her to physical abuse, including going into the
bathroom, smashing her head into the wall that left hair, taking her to the
living room and vaginally raping her. Further, it's the state's theory, Your
Honor, that the defendant, through the course of these events, was

1   sentencing in August 2004, the state explained that the two kidnapping convictions had

2   been pleaded as alternative theories for the same offense. Nevertheless, defense counsel

3   did not ask the trial court to merge the two convictions.

4          In his petition for post-conviction relief, defendant asserted that the two

5   kidnapping convictions should have merged and that he was denied constitutionally

6   adequate and effective assistance of trial counsel under the Oregon and federal

7   constitutions as a result of trial counsel's failure to seek merger. The post-conviction

8   court denied the petition. Petitioner appeals, assigning error to (among other things) the

9   rejection of his contention that his criminal trial counsel failed to provide adequate and

10  effective counsel in neglecting to seek merger of the kidnapping convictions.

11         To prevail on a claim of constitutionally inadequate assistance under

12  Article I, section 11, of the Oregon Constitution, a petitioner must show by a

13  preponderance of the evidence that counsel "failed to exercise reasonable professional

14  skill and judgment, and that petitioner suffered prejudice as a result." *Lichau v. Baldwin*,

15  333 Or 350, 359, 39 P3d 851 (2002). Whether counsel exercised reasonable skill and

16  judgment entails an examination of the law at the time of the criminal trial. *Wells v.*

17  *Peterson*, 315 Or 233, 236, 844 P2d 192 (1992). The fact that the law is "unsettled" at

18  the time of trial is relevant, but not dispositive. As the Supreme Court explained in

---

threatening to kill [the victim], had leveled the gun at her several times, in
addition to the events that we described in the master bedroom that
constituted attempted aggravated murder and that his purpose in so doing
was to terrorize her."

1  *Burdge v. Palmateer*, 338 Or 490, 500, 112 P3d 320 (2005), whether counsel rendered

2  inadequate assistance is determined by the "reasonable professional skill and judgment"

3  standard and not by any generalized rule of thumb such as "unsettled questions of law."

4  Even when the law is unsettled, the benefits of raising an issue may be so obvious that

5  any lawyer exercising reasonable professional skill and judgment would do so. *Id.*

6      In this case, whether the two kidnapping convictions should have merged is

7  squarely controlled by *State v. White*, 202 Or App 1, 121 P3d 3 (2005), *aff'd*, 341 Or 624,

8  147 P3d 313 (2006). In *White*, we held that ORS 161.067(1)[3] requires the merger of

9  multiple convictions of first-degree kidnapping arising out of the same conduct or

10  criminal episode that are based on alternate theories for elevating second-degree

11  kidnapping to first-degree kidnapping. In reaching that conclusion, we relied on the

12  Oregon Supreme Court's opinion in *State v. Barrett*, 331 Or 27, 36, 10 P3d 901 (2000),

13  an aggravated murder case in which the court held that the multiple counts of aggravated

14  murder with which the defendant had been charged

15      "constitute no more than different theories under which murder becomes
16      subject to the enhanced penalties for aggravated murder. That defendant's
17      conduct in intentionally murdering the victim in this case was 'aggravated'
18      by 'any,' *i.e.*, one or more, act surrounding that conduct does not convert
19      that conduct into more than one separately punishable offense."

---

[3]    ORS 161.067(1) provides, in relevant part:

        "When the same conduct or criminal episode violates two or more
        statutory provisions and each provision requires proof of an element that
        the others do not, there are as many separately punishable offenses as there
        are separate statutory violations."

4

1    *Id.* We reasoned in *White* that the kidnapping statute, like the aggravated murder statute

2    considered by the Supreme Court in *Barrett*, enumerated different theories by which the

3    offense is enhanced.  In *Barrett*, the court had recognized that, despite the conclusion that

4    the convictions should merge, there were reasons why the "defendant's record should

5    depict the full extent of his involvement in the criminal conduct that led to the victim's

6    death." 331 Or at 36.  The court said, "[w]e think that the appropriate procedure would

7    have been to enter one judgment of conviction reflecting the defendant's guilt on the

8    charge of aggravated murder, which judgment separately would enumerate each of the

9    existing aggravating factors." *Id.* at 37.  Relying on *Barrett*, we held in *White* that the

10   same procedure was appropriate under the kidnapping statute, and that only a single

11   judgment of conviction for kidnapping could be entered, stating the theories of

12   conviction. *White*, 202 Or App at 13.

13           Clearly, in light of *White* and *Barrett*, the two kidnapping convictions in

14   this case should have merged.  As we have noted, the state concedes that much.  But, as

15   the state correctly contends, that does not end the matter.  The dispositive question is not

16   merely whether the convictions should have merged, but whether, at the time the

17   convictions were entered, reasonable counsel would have raised the issue.  On that

18   question, the state insists that, at the relevant time, the issue was not nearly as clear as it

19   is now.  In particular, the state notes that, two years after the Supreme Court decided

20   *Barrett*, the court issued a decision in *State v. Barnum*, 333 Or 297, 39 P3d 178 (2002),

21   which, the state contends, introduced considerable confusion to the subject of merger of

1    convictions.

2                 In truth, the law pertaining to merger of convictions has not always been

3    clear.  It is fair to say that *Barnum*, in particular, muddied the waters on the question, at

4    least for a time.

5                 In *Barnum*, the defendant was convicted of two separate counts of first-

6    degree burglary, ORS 164.225, one based on his having entered and remained in the

7    victim's house with the intent to commit arson, and one based on his having entered and

8    remained in the victim's house with the intent to commit theft.  333 Or at 300.  The court

9    had before it the question whether the defendant could properly be convicted of both

10   counts.  Citing the discussion from *Barrett* in which the court had explained why, despite

11   its conclusion that there could only be a single judgment of conviction, "there are cogent

12   reasons why defendant's record should depict the full extent of his involvement in the

13   criminal conduct that led to the victim's death," 331 Or at 36-37, the court explained in

14   *Barnum* that "[i]f the trier of fact found that each element of each count had been proved

15   beyond a reasonable doubt, then defendant properly could be convicted of both counts of

16   burglary, regardless of whether the two violations were separately punishable."  333 Or at

17   302.  The court held in *Barnum* that there was sufficient evidence to convict the

18   defendant of both counts of burglary.  333 Or at 302-03.

19                 Following *Barnum*, this court decided *State v. Lucio-Camargo*, 186 Or App

20   144, 62 P3d 811 (2003), a burglary case in which we explained our "quandary" in

21   attempting to reconcile *Barnum* with the Supreme Court's prior case law:

1       "*Barnum* appears, without explanation, to authorize multiple convictions
2       and punishments even though the defendant's conduct violated only one
3       statutory provision and does not otherwise qualify under subsections (2)
4       and (3) of ORS 161.067."

5   186 Or App at 154. We noted the apparent conflict between *Barnum*, on the one hand,

6   and *Barrett* and at least two other Supreme Court opinions, *State v. Crotsley*, 308 Or 272,

7   276-77, 779 P2d 600 (1989), and *State v. Tucker*, 315 Or 321, 845 P2d 904 (1993), on the

8   other. In attempting to reconcile *Barnum* with those cases, we said:

9       "Perhaps the court believed that the issue of whether separate convictions
10      for burglary could be entered for a single unlawful entry was not before it,
11      thus leading to the failure to discuss that issue. Regardless, we are left to
12      discern the implications of *Barnum* in this case, which has different facts
13      and, arguably, a different issue.

14         "As we have said previously, the issue here is whether, in the
15      language of ORS 161.067, there are separately punishable offenses for
16      burglary because of defendant's unlawful entry into the victim's premises
17      with the intent to commit two separate crimes. We think that this case is
18      more like *Barrett* than *Barnum*. We continue to believe that the threshold
19      question is whether defendant violated more than one statutory provision
20      within the meaning of ORS 161.067(1). For the reasons expressed in our
21      initial opinion, we conclude that ORS 164.225 is a single statutory
22      provision that can be violated in alternative ways and that, consequently,
23      defendant's conduct was a violation of only one statutory provision for
24      purposes of that subsection."

25  *Lucio-Camargo*, 186 Or App at 155-56.

26         Thus, at the time of petitioner's sentencing in August 2004, this court's

27  opinion in *Lucio-Camargo* was the most recent appellate decision analyzing the issue of

28  merger of convictions under ORS 161.067(1), and it had applied the Supreme Court's

29  analysis in *Barrett* in determining whether more than one statute has been violated within

1   the meaning of that statute.[4]

2          We subsequently decided *White*. In affirming our decision, 341 Or 624,

3   637, 147 P3d 313 (2006), the Supreme Court explained that *Barnum* had been incorrectly

4   decided. The court rejected the state's suggestion that *Barnum* stands for the proposition

5   that ORS 161.067 "functions primarily as a 'gatekeeper' statute, aimed at determining

6   whether multiple convictions are potentially subject to consecutive sentencing" under

7   ORS 137.123, rather than whether a defendant could be properly convicted of the

8   multiple offenses. *White*, 341 Or at 634. The court held that *Barnum* was inconsistent

9   with the words and history of ORS 161.167 and the court's previous cases. The court

10  said that *Barrett* "maps out the proper approach to the question whether defendant's

11  conduct * * * violated 'two or more statutory provisions' * * * for purposes of ORS

12  161.067(1)." *White*, 341 Or at 638. The court reasoned that, as in *Barrett*, the legislature

13  intended the burglary statute to provide two alternative ways to commit the offense, but

14  did not define those alternatives in a way that would permit multiple burglary convictions

15  to arise out of a single unlawful entry. *White*, 341 Or at 640. The court further rejected

16  the contention that multiple convictions could be entered under ORS 161.067(3), as

17  repeated violations of the same statutory provision. The court said:

_____

[4]      We note that the state petitioned for review of our opinion in *Lucio-Camargo* and
that the Supreme Court allowed review, but that the defendant subsequently died. On
February 18, 2004, the Supreme Court dismissed the petition for review and vacated our
decision in *Lucio-Camargo*. 336 Or 422, 86 P3d 1139 (2004). We recognize that *Lucio-
Camargo*, is not authoritative; however, it demonstrates the confused state of the law at
the time of sentencing.

1    "[G]iven that we have rejected the idea that the legislature intended
2    to define as a separate crime the act of remaining unlawfully in a building
3    after an unlawful entry, the idea that one could unlawfully enter a building
4    in question only once yet 'repeatedly' violate the burglary statute cannot be
5    sustained."

6    *White*, 341 Or at 640.

7    In this case, the state now asserts that, in light of the unpredictable path of

8    the law from *Barrett* to *Barnum* to *White*, trial counsel was not ineffective or inadequate

9    in failing to seek a merger of the two kidnapping convictions. According to the state,

10   "not every reasonable trial counsel would have understood that defendant's kidnapping

11   convictions should merge." The state contends that, due to the unclear state of the law

12   subsequent to *Barnum*, a reasonable attorney in 2004 could have concluded that the

13   kidnapping statute defined multiple crimes and that a defendant could lawfully receive

14   two convictions for first-degree kidnapping arising out of the same conduct or criminal

15   episode if the evidence established the different theories for enhancement of the offense.

16   The state, however, misapprehends the applicable test for determining the

17   constitutional adequacy of counsel. The existence of uncertainty as to the nature of the

18   applicable law does not, by itself, excuse a lawyer from making arguments about that

19   uncertain law, if the argument would benefit the client. The Supreme Court addressed

20   that very point in *Burdge*, in which the state had urged the court to adopt the position that

21   a lawyer is *never* constitutionally inadequate for failing to raise an unsettled question of

22   law. The court expressly rejected the state's contention:

23   "The correct standard is whether counsel exercised reasonable professional
24   skill and judgment. Even if the meaning of a statute remains unsettled, the

9

1      statute may so obviously offer possible benefits to a defendant that any
2      lawyer exercising reasonable professional skill and judgment would raise it.
3      It is the 'reasonable professional skill and judgment' standard, and not
4      generalized and imprecise rules of thumb such as 'unsettled questions of
5      law,' that determines whether counsel rendered inadequate assistance."

6   *Burdge*, 338 Or at 500.

7        Thus, the question that we must address is whether, despite the ambiguity

8 in the case law, the benefits to defendant of raising the merger issue were so obvious that

9 any lawyer exercising reasonable professional skill and judgment would have done so.

10 We conclude that the answer is yes.

11        As the Supreme Court pointed out in *Barrett*, the question is one of

12 statutory construction. At the time of petitioner's sentencing, the issue of merger had

13 been addressed in the context of cases involving aggravated murder, *Barrett*, 331 Or at

14 33-36; first-degree rape, *Crotsley*, 308 Or at 274; and burglary, *Tucker*, 315 Or at 331. It

15 had not yet been addressed in the context of the kidnapping statutes. As this court said in

16 its first opinion in *State v. Lucio-Camargo*, 172 Or App 298, 305, 18 P3d 467 (2001), the

17 Supreme Court made clear in *Barrett* that the question whether the defendant has

18 violated more than one statutory provision within the meaning of ORS 161.067(1) is

19 largely dependent on an interpretation of the statutory provisions defining the offense and

20 whether they show that by listing separate theories for conviction, the legislature intended

21 to address "separate and distinct legislative concerns." *Id*. At the time of petitioner's

22 sentencing, reasonable counsel would have understood that, despite *Barnum*, the question

23 was open whether multiple kidnapping convictions based on separate theories must

1    merge.

2         In light of *Barrett* and *Lucio-Camargo*, and the similarity in the structure of

3    the aggravated murder statutes, the burglary statutes, and those involving kidnapping, we

4    conclude that reasonable counsel should also have concluded that raising the issue of

5    merger in the context of kidnapping was likely to be beneficial to petitioner. We

6    conclude for those reasons that any lawyer exercising reasonable professional skill and

7    judgment would have raised the issue whether defendant's kidnapping convictions should

8    merge under ORS 161.067(1). *See Burdge*, 338 Or at 500. Accordingly, we conclude

9    that the post-conviction court erred in concluding that petitioner's trial counsel was not

10   ineffective in failing to raise the merger question at sentencing.

11        Reversed and remanded with instructions to enter judgment granting post-

12   conviction relief and resentencing on kidnapping convictions; otherwise affirmed.

## CERTIFICATE OF SERVICE

The below-signed individual certifies that he served two copies of the enclosed document, to wit: Appellant's Petition for Review in *Ross v. Hill*, A135040, on the below listed individual by either mailing them first class or causing them to be hand delivered on the below-listed date.

Served on:

Dept. of Justice, App. Div.
400 Justice Bldg.
1162 Court St. NE
Salem, OR 97310

Date:  June 14, 2010

_____
Andrew S. Chilton, OSB No. 972339